NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CLYNT CROSBY,<br><br>        Plaintiff,<br><br>v.<br><br>DEMETRIOS G. GEORGAKOPOULOS, DHS DISTRICT DIRECTOR, BUREAU OF IMMIGRATION AND CUSTOMS ENFORCEMENT - "BICE," WARDEN RALPH GREEN - HCCC, HUDSON COUNTY, KEEFE COMMISARY NETWORK SALES, ATTORNEY GENERAL JOHN ASHCROFT,<br><br>        Defendant(s). | Civ. No. 03-5232 (WGB)<br><br>**O P I N I O N** |

Clynt Crosby
Hudson County Correctional Center
#134236
35 Hackensack Avenue
South Kearny, New Jersey 07032

      Pro Se Plaintiff

Christopher J. Christie
United States Attorn
    By:  Anthony J. Labruna, Jr.
       Assistant United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102

      Counsel for Defendants Demetrios G. Georgakopoulos, DHS
      District Director - BICE and Attorney General John
      Ashcroft

Donato J. Battista
Hudson County Counsel
    By:  Michael L. Dermody
      First Assistant County Counsel
Administrative Building Annex
567 Pavonia Avenue
Jersey City, NJ 07306

      Counsel for Warden Ralph Green - HCCC and Hudson County

**BASSLER, SENIOR DISTRICT JUDGE:**

Plaintiff Clynt Crosby ("Crosby") is an immigration detainee at the Hudson County Correctional Center ("HCCC").  Crosby claims to be suffering from various prison conditions including second-hand smoke, extreme cold, gang activity and unsanitary food trays in violation of his Eighth Amendment rights.  He brings his action against both federal and state defendants in their official and individual capacities.

There are two pending motions in the above-titled action to dismiss Crosby's Amended Complaint.  First, there is a motion to dismiss and/or for summary judgment brought by defendants Warden Ralph Green ("Warden Green") and Hudson County. Second, there is a motion to dismiss and/or for summary judgment brought by defendants Demetrios G. Georgakopoulos ("Georgakopoulos"), District Director of the Bureau of Immigration and Customs Enforcement, and John Ashcroft ("Ashcroft"), United States Attorney General.

This Court has subject matter jurisdiction under 42 U.S.C. § 1981, 28 U.S.C. § 1331, and <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L. Ed. 2d 619 (1971).  Venue is proper under 28 U.S.C. § 1391(b),(e).

For the following reasons, the motion to dismiss by Georgakopoulos and Ashcroft, in their official and individual

2

capacities, is **granted**.  The motion to dismiss by Hudson County is **granted**.  The motion to dismiss by Warden Green in his official capacity is granted.  The motion to dismiss by Warden Green in his individual capacity on Crosby's claims of gang activity, poor air ventilation, unsanitary food trays, spoiled food, and high cost telephone calls is **granted**.  The motion to dismiss by Warden Green in his individual capacity on Crosby's claims of second-hand smoke exposure and cold temperature is **denied**.

**I.    BACKGROUND**

Crosby, proceeding pro se, filed the initial Complaint against six defendants: (1) the Department of Homeland Security ("DHS"); (2) Georgakopoulos; (3) Ashcroft; (4) Warden Green; (5) HCCC; and (6) Keefe Commisary Network, L.L.C. ("Keefe").  On December 9, 2003, this Court dismissed with prejudice all claims against the DHS and dismissed without prejudice all claims against Ashcroft and Georgakopoulos.  In addition, the Court held that HCCC could not be sued for constitutional violations pursuant to <u>Monell v. Dept. of Social Services of New York City</u>, 436 U.S. 658, 688-690 (1978).  Nevertheless, this Court allowed those claims against HCCC to survive by construing claims brought against HCCC as claims against Hudson County.

On January 29, 2004, Crosby filed an Amended Complaint.  The defendants named in the Amended Complaint were: (1) Keefe; (2)

Warden Green; (3) Hudson County; (4) Ashcroft; and (5) Georgakopoulos. Crosby alleged cruel and unusual punishment in violation of the Eighth Amendment by these defendants, including dirty and dangerous prison conditions and exposure to second-hand smoke. Keefe subsequently filed a motion to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), which this Court granted on August 17, 2004. The United States Attorney, on behalf of Georgakopoulos and Ashcroft ("Federal Defendants"), moved to dismiss on August 17, 2004. Hudson County Counsel, on behalf of Warden Green and Hudson County ("State Defendants"), moved to dismiss on January 7, 2005.

## II.   DISCUSSION

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for a dismissal based upon the pleader's "failure to state a claim upon which relief can be granted." In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Dismissal is not appropriate

4

unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); In re Rockefeller Ctr. Prop., Inc. Sec. Litig., 311 F.3d 198, 215 (3d Cir. 2002) (internal citations omitted).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

Typically courts only look to the face of the pleadings in considering motions made under Rule 12(b)(6).  However, courts may examine a "document integral to or explicitly relied upon in the complaint without converting the motion to dismiss into one for summary judgment."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted).

B.   Constitutional Claims

1.   Eighth Amendment Standard

Plaintiff asserts that the prison conditions of the HCCC violate his Eighth Amendment protections against cruel and unusual punishment.  Section 1983 of the Civil Rights Act of 1871 provides "a federal remedy against any person who, acting under color of state law, deprives another of constitutional rights." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 258 (1981). In Bivens, the Supreme Court recognized an implied right of action for damages in federal court where a federal agent acting

under color of federal authority deprived the plaintiff of constitutional rights. 403 U.S. at 397, 91 S.Ct. at 2005.  "A Bivens action . . . is the federal equivalent of the § 1983 cause of action against state actors." Brown v. Philip Morris, 250 F.3d 789, 800 (3d Cir. 2001).

The Eighth Amendment's "Cruel and Unusual Punishments Clause was designed to protect those convicted of crimes . . . ." Fuentes v. Wagner, 206 F.3d 335, 344 n.11 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312, 318, 106 S.Ct. 1078, 89 L. Ed. 2d 251 (1986)).  Thus, Eighth Amendment protections apply only after a formal adjudication of guilt.  Ingraham v. Wright, 430 U.S. 651, 671 n.40, 97 S.Ct. 1401, 1412 n.40 (1977); see also City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 2983 (1983) (holding that Eighth Amendment has no application to a person who had not yet been convicted at the time he required medical care).  Pre-trial detainees whose imprisonment did not result from the conviction of a crime cannot assert the Eighth Amendment in protecting their constitutional rights.  Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005).

Crosby is an immigration detainee.  He is not confined at the HCCC as a result of the conviction of a crime.  "As a person detained for deportation, plaintiff's status is equivalent to a pretrial detainee, whose constitutional claims are considered under the due process clause . . . instead of the Eighth

Amendment." Gonzalez-Cifuentes v. United States Dep't of Homeland Sec., 04-4855(WHW) 2005 WL 1106562, at *6 (D.N.J. May 3, 2005) (citing Hubbard, 399 F.3d at 158); see also Despaigne v. Crolew, 89 F. Supp. 2d 582, 585 (E.D. Pa. 2000) (finding that an immigration detainee is analogous to a pre-trial detainee). Crosby, as a detainee who has not been convicted of any crime, may not assert an Eighth Amendment violation against defendants.

Considering Crosby's claims all rely on Eighth Amendment violations, the Court need not address their merits. Nevertheless, because a pro se plaintiff's complaint is construed more liberally, the Court will proceed to address Crosby's claims as though he asserted them properly under the Due Process Clause of the Fifth Amendment against Federal Defendants and under the Due Process Clause of the Fourteenth Amendment against State Defendants. Failing to plead claims under due process does no lasting damage. The Supreme Court has concluded that the rights of pre-trial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner." Natale v. Camden County Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003) (quoting City of Revere, 467 U.S. 239 at 244, 103 S.Ct. at 2983.) The Third Circuit Court of Appeals has recognized that "pretrial detainees are entitled to greater constitutional protection than that provided by the Eighth Amendment." Hubbard, 399 F.3d at 167 n.23 (internal citations omitted).

2.   Due Process Standard

"In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process . . . the proper inquiry is whether those conditions amount to punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 1872 (1979).  To determine whether the conditions amount to punishment, "[a] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose." Id. at 538, 99 S.Ct. at 1873.  The Eighth Amendment standard of "deliberate indifference" to inmate health and safety by prison officials does "seem to establish a floor of sorts" for the due process inquiry into Crosby's claims. Kost v. Kozakiewicz, 1 F.3d 176, 188 n.10 (3d Cir. 1993).  In evaluating a pre-trial detainee's claims, the Third Circuit Court of Appeals has "found no reason to apply a different standard than that set forth in Estelle (pertaining to prisoners' claims of inadequate medical care under the Eighth Amendment) . . . ." Natale, 318 F.3d at 581 (citing Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L. Ed. 2d 251 (1976) (holding that the Eighth Amendment prohibits deliberate indifference to prisoners' serious medical needs)). "'Deliberate indifference is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm." Gonzales-Cifuentes, 2005 WL

8

1106562, at *7 (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 128 L. Ed. 2d 811 (1994)).

    C.   <u>Claims Against State Defendants</u>

From Crosby's Amended Complaint, it appears that Crosby alleges the following claims against Warden Green: (1) exposure to second-hand smoke; (2) cold temperatures in cells and gym; (3) gang activity; (4) spoiled food; (5) poor air ventilation; (6) unsanitary food trays; and (7) high cost telephone calls.  Am. Compl. 7-9.  Crosby alleges that Warden Green, in his official and personal capacity, ignored Crosby's multiple grievances as well as the many problems in the prison.  <u>Id.</u> at 8.  Crosby further alleges that Hudson County is liable as the location where the violations occurred.  <u>Id.</u> at 6.

    1.   Eleventh Amendment Immunity

The Eleventh Amendment bars Crosby from bringing suit against Warden Green in his official capacity.  The Eleventh Amendment precludes federal jurisdiction over a state absent the state's consent to suit.  <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 54 (1997).  State agencies and state officers who act on behalf of the state are also protected by Eleventh Amendment immunity. <u>Natural Res. Def. Council v. Ca. Dep't of Transp.</u>, 96 F.3d 420 (9th Cir. 1996) (citing <u>P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 142-46 (1993) and <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 101 (1984)).  "[A]n official capacity suit 'is not a suit against the official but rather is a

suit against the official's office. As such it is no different from a suit against the State itself." <u>Hafer v. Melo</u>, 502 U.S. 21, 26, 112 S.Ct. 358, 362 (1991) (quoting <u>Will v. Mich. Dep't. of State Police</u>, 491 U.S. 58, 71 109 S.Ct. 2304, 2312 (1989)). Under § 1983, state officials acting in their official capacities like Warden Green, are not "persons." <u>Id.</u>  Therefore, the Court dismisses Warden Green in his official capacity from Crosby's action.

"Personal capacity suits on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." <u>Id.</u> at 25, 112 S.Ct. at 362.  Since "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983," the Eleventh Amendment does not bar suit. <u>Id.</u> at 31, 112 S.Ct. at 365.  Rather, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or as the person in charge, had knowledge of and acquiesced in his subordinates' violations." <u>A.M. ex rel J.M.K. v. Luzerne County Juvenile Det. Ctr.</u>, 372 F.3d 572, 586 (3d Cir. 2004).  Therefore, the Eleventh Amendment does not bar Crosby's suit against Warden Green in his individual capacity.

    2.   Qualified Immunity

Although not explicitly stated in the State Defendants' brief, it appears that the State Defendants bring a qualified immunity defense with respect to Warden Green's liability as the

ultimate supervisor of the HCCC.

"A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)(internal citations omitted).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," but allegations must be made with "appropriate particularity." Id.  Crosby alleges that Warden Green, by "failing to oversee or properly supervise officer [sic] under his charge, became personally involved in the wrongdoing."  Am. Compl. 8.  Therefore, to the extent that Crosby attempts to place liability on Warden Green on the basis of respondeat superior for the actions of his subordinates, Crosby's claims lack merit.  The Court dismisses all claims by Crosby against Warden Green solely as the supervisor of the officers who are personally involved in the action.

3.    Claim of Second-Hand Smoke Exposure

A valid cause of action under the Eighth Amendment exists when an inmate alleges that prison officials have exposed the inmate to levels of environmental tobacco smoke ("ETS") that "pose an unreasonable risk of serious damage to his future health." Helling v. McKinney, 509 U.S. 25, 35 113 S.Ct. 2475, 2481 (1993). Deliberate indifference by prison authorities is determined in light of prison officials' current attitudes and

11

conduct.  <u>Id.</u>

Crosby alleges that although the HCCC has a no smoking policy, the policy is continuously violated by both officers of the HCCC and inmates.  In Crosby's Amended Complaint, he notes that "on an [sic] average . . . 34 of the 55 [inmates] are active smokers, from morning till night, in the cells, day room, constantly smoking."  Am. Compl. 8.  Crosby alleges the constant smoking causes risk of emphysema as well as "daily headaches, [for which] the only medical solution is Motrin . . . ."  Am. Compl. 9, 14.  Taking Crosby's allegations to be true, any smoking in the HCCC in violation of the no-smoking policy would be unreasonable and considered a form of punishment against pre-trial detainees.  The Court cannot conceive of any legitimate government purpose in violating a facility policy, nor is it rationally related to the purpose of detaining inmates.  There is also a factual dispute over whether Crosby filed a second-hand smoke grievance with Warden Green.  Discovery may reveal relevant information as to whether Warden Green acted with deliberate indifference.  In analyzing the merits of Crosby's claim, adoption of a smoking policy will "bear heavily on the inquiry into deliberate indifference."  <u>Id.</u>  At this juncture, it would be premature to grant dismissal of Crosby's ETS claim because discovery has not commenced.

The State Defendants point the Court to <u>Steading v. Thompson</u>, 941 F.2d 498 (7th Cir. 1991), which holds that prison

authorities do not violate the Eighth Amendment by failing to provide a smoke-free environment.  The State Defendants' reliance on <u>Steading</u> is misplaced.  The prison in <u>Steading</u> did not have a smoke-free policy.  <u>Id.</u> at 499.  Absent any existing smoke-free policy, prison authorities who decide in favor of permitting smoking in their buildings do not violate the Eighth Amendment. <u>Id.</u> at 500.  If indeed the prison officials at HCCC are ignoring Crosby's exposure to high levels of ETS in an environment where smoking is prohibited, Crosby states a valid claim for relief.[1] "[I]t would be unreasonable for prison officials to believe that they were not violating the prisoners' Eighth Amendment rights . . . [where] '[p]laintiff's allegations, if believed, overwhelmingly describe a prison environment permeated with smoke resulting from inter alia, under-enforcement of inadequate smoking rules, overcrowding of inmates, and poor ventilation." <u>Atkinson v. Taylor</u>, 316 F.3d 257, 264 (3d Cir. 2003)(quoting <u>Warren v. Keane</u>, 196 F.3d 330, 333 (2d Cir. 1999)).  The Court denies the State Defendants' motion to dismiss Plaintiff's

---

[1]The State Defendants also argue that according to the Prison Litigation Reform Act, 32 U.S.C.A. § 1997(e)(a), Crosby cannot bring suit until he has exhausted all his administrative remedies.  The State Defendants maintain that Crosby never filed a grievance for second-hand smoke.  The Court declines to convert this motion to dismiss into one for summary judgment by looking beyond the pleadings.  Nevertheless, the Court observes that Crosby's Statement of Material Fact alleges that he did file a specific grievance for second-hand smoke, copies of which have been confiscated.  These disputed facts would be sufficient to overcome summary judgment, particularly where, as here, the parties have yet to engage in discovery.

second-hand smoke inhalation claim.

    4.  Claim of Cold Temperature

"Prisoners have a right under the Eighth Amendment to be free from extreme hot and cold temperatures." Freeman v. Berge, 2003 WL 23272395 at *12 (W.D.Wis. Dec. 17, 2003) (internal citations omitted).  "The same Eighth Amendment standard applies to cell temperatures as to other conditions of confinement: whether the temperatures subject the inmate to a substantial risk of serious harm." Id.  In Wilson v. Seiter, 501 U.S. 294, 304, 111 S.Ct. 2321, 2327 (1991), the Supreme Court noted,

> [s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth or exercise – for example, a low cell temperature at night combined with a failure to issue blankets.

Crosby alleges the same combination of conditions as in the example provided by the Supreme Court in Wilson.  Crosby states that there is no heat in the cells or the gym. Am. Compl. 7. Night temperatures are "sub-zero," and the officers refuse to provide extra blankets.  Id.  Moreover, Crosby alleges that the cold is causing the joints in his hand to swell.  Id. at 13. This combination of allegations describing Crosby's deprivation of warmth potentially amount to punishment.

In terms of Warden Green's liability, a supervisor can be found personally involved in the deprivation of a plaintiff's rights when, "[a] supervisory official, after learning of the

14

violation through a report or appeal, may have failed to remedy the wrong . . . ." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (internal citations omitted). Crosby filed a specific grievance regarding cold temperatures, addressed to Warden Green. Because Crosby alleges that Warden Green received notice of the cold temperatures and "failed to remedy the wrong," the Court denies Warden Green's motion to dismiss with respect to Crosby's cold temperature claim.

> 5. Claim of Gang Activity

Crosby alleges that Warden Green failed to protect inmates from known gang members who act violently against other inmates. Am. Compl. 7. He makes general allegations that federal inmates constantly get into fights with gang members and that there has been no response to his grievances. Id. at 8. The State Defendants assert, and the Court agrees, that Crosby is only generally concerned about gang activity due to the fact that both prisoners and detainees are housed together. Crosby does not allege that he is under any specific threat from any other inmate or that Warden Green "participated in violating the plaintiff's rights, directed others to violate them" or "had knowledge of and acquiesced in his subordinates' violations" of failing to protect Crosby. A.M. ex rel J.M.K., 372 F.3d at 586. Based on such general allegations by Crosby, the Court cannot find Warden Green to be deliberately indifferent, objectively or subjectively, to any substantial risk of harm. Rather, "[p]rison administrators

therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." <u>Bell</u>, 441 U.S. at 547, 99 S.Ct. at 1878.  Because Crosby does not allege activity amounting to any sort of punishment against him, the Court dismisses Crosby's claim regarding gang activity.

　　　　　6.   Claims of Poor Air Ventilation, Unsanitary Food
　　　　　　　 Trays, Spoiled Food, and High Cost Calls.

　　　Crosby alleges various other prison conditions violations regarding poor air ventilation, the unsanitary use of food trays, spoiled food, and prohibitively high costs for telephone calls. The State Defendants properly direct the Court to <u>Marnin v. Pinto</u>, 463 F.2d 583, 584 (3d Cir. 1972), in which the appellant made "blanket statements" alleging bad food and miserable living conditions.  The Third Circuit Court of Appeals stated that "naked statements such as this do not ordinarily merit Federal court intervention." <u>Id.</u>  Likewise, Crosby's claims are conclusory and do not merit a cause of action under § 1983.  The Court notes that, in evaluating prison conditions cases, "the Eighth Amendment is not a basis for broad prison reform . . . Any needed prison reform is an executive and legislative responsibility." <u>Doty v. County of Lassen</u>, 37 F.3d 540, 543 (9th Cir. 1994) (internal quotes omitted).  Crosby's claims are not sufficient to allege any form of punishment.  Instead they appear

to be incident to the governmental purpose of detainment.  "The fact that harm is inflicted by governmental authority does not make it punishment.  Figuratively speaking all discomforting action may be deemed punishment because it deprives of what otherwise would be enjoyed."  Bell, 441 U.S. at 539 n.19, 99 S.Ct. at 1874 n.19.  Thus, the Court dismisses Crosby's claims with respect to poor air ventilation, the unsanitary use of food trays, spoiled food, and prohibitively high costs for telephone calls.

7.   Hudson County's Liability

In Monell, the Supreme Court held that municipalities, such as Hudson County, may be held liable under § 1983.  436 U.S. at 690, 98 S.Ct. at 2035.  Municipalities, however, cannot be held liable for § 1983 claims under a theory of respondeat superior. Id. at 691, 98 S.Ct. at 2036.  "Instead, it is when execution of a [local] government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the [local] government as an entity is responsible under § 1983."  Id. at 694, 98 S.Ct. at 2037-38.  In order to hold Hudson County liable for any constitutional violations, "there must be an affirmative link between the policy and the particular violation alleged." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436 (1985).

Crosby merely alleges that Hudson County is where the

17

"illegal/wrongful policies are made . . . ."  Am. Compl. 6.  He does not allege any specific policies implemented by Hudson County that are in violation of his rights.  Because Crosby does not state an adequate claim against Hudson County, the Court dismisses Hudson County from Crosby's action.

      8. __Products Liability Claim

    To the extent that any claims against Hudson County remain, the Court construes the remainder as claims brought under a theory of products liability.  Counsel for Hudson County refers to this Court's August 17, 2004 Opinion dismissing Keefe to assert that Hudson County should be dismissed under the same products liability theory construed from Crosby's second-hand smoke allegations.  The New Jersey Products Liability Act relieves "product sellers" from liability after filing an affidavit identifying the manufacturer of the product unless the seller (1) exercised significant control over the design, manufacture, packaging or labeling of the product; (2) knew or should have known about the product defect; or (3) created the product defect.  N.J.S.A. 2A:58C-9(a)-(b),(d).  The Court agrees that Hudson County, which contracted with Keefe to sell products in the HCCC Commissary, is further removed than Keefe as a product seller.  Hudson County is not a manufacturer of any sort, let alone a manufacturer of any products that cause harm from second-hand smoke.  Thus, Hudson County cannot be held liable under the statute and is dismissed from any products liability

claim on the same grounds as Keefe. (<u>See</u> Aug. 17, 2004 Op.)

    D.   <u>Claims against Federal Defendants</u>

Crosby alleges that Georgakopoulos, in his official and individual capacity, failed to respond to Crosby's grievances and to secure a healthy environment for immigration detainees.  Am. Compl. 12-13.  Crosby further alleges that Ashcroft, in his official and individual capacity, is responsible for the actions of his subordinates and failed to properly inspect the facilities prior to approving them for use by immigration detainees.  <u>Id.</u> at 14-15.  The claims against the Federal Defendants in their official capacity are dismissed under the doctrine of sovereign immunity.  The claims against the Federal Defendants in their individual capacity are dismissed under the doctrine of qualified immunity.

    1.   Sovereign Immunity

It is well-settled that in the absence of an express waiver of immunity by Congress, the United States, its agencies, or officers are immune from suit.  <u>Dep't of Army v. Blue Fox, Inc.</u> 525 U.S. 255, 260, 119 S.Ct. 687, 690 (1999); <u>Beneficial Consumer Disc. Co. v. Poltonowicz</u>, 47 F.3d 91, 93-94 (3d Cir. 1995) (internal citations omitted).  Therefore, when a federal agency's officer is named in an action, Congress must have consented to the action because the United States is the real party in the suit.  Terrill Manor Assocs. v. United States Dep't of Housing & Urban Dev., 496 F. Supp. 1118, 1121 n.5 (D.C.N.J. 1980).  See

Hafer, 502 U.S. at 25, 112 S.Ct. at 361 ("real party in interest
in an official-capacity suit is the governmental entity and not
the named official").  "Indeed, when officials sued in this
capacity in federal court die or leave office, their successors
automatically assume their role in the litigation."  Hafer, 502
U.S. at 25, 112 S.Ct. at 361.

The Federal Tort Claims Act ("FTCA") partially waives
sovereign immunity for injuries "caused by the negligent or
wrongful act or omission of any employee of the Government, under
circumstances where the United States, if a private person, would
be liable to the claimant in accordance with the law of the place
where the act or omission occurred."  28 U.S.C. § 1346(b).  This
waiver, however, does not subject the United States to liability
for constitutional tort claims.  FDIC v. Meyer, 510 U.S. 471, 478
114 S.Ct. 996, 1001 (1994); Biase v. Kaplan, 852 F. Supp. 268,
279 (D.N.J. 1994).  Under the FTCA, the "law of the place where
the act or omission occurred" is state law.  Id.  "By definition,
federal law, not state law, provides the source of liability for
a claim alleging the deprivation of a constitutional right."  Id.
In this case, Crosby has only sued for alleged violations of his
constitutional right to be free from cruel and unusual
punishment.  Federal and not state law applies to this case.

Sovereign immunity is a jurisdictional issue.  Meyer 510
U.S. at 475, 114 S.Ct. at 1000.  Because constitutional claims
are not cognizable under the FTCA, and the United States has not

waived its sovereign immunity, this Court lacks jurisdiction to hear Crosby's claims against Federal Defendants.[2]   The Court therefore dismisses Crosby's claims against Federal Defendants in their official capacity pursuant to Fed. R. Civ. P. 12(b)(1).

2.   Qualified Immunity

Sovereign immunity does not bar Plaintiff from bringing a constitutional tort claim against the Federal Defendants in their individual capacities.  Hines v. Irvington Counseling Ctr., 933 F. Supp. 382, 388 (D.N.J. 1996).  Nevertheless, the Federal Defendants assert a valid qualified immunity defense. Government officials such as the Federal Defendants are generally shielded from liability for civil damages in their individual capacity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person should have known." Smith v. Marasco, 318 F.3d 497, 510 (3d Cir. 2003) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

Just as respondeat superior cannot be the basis of liability

---

[2]Crosby's argument that his action is not a tort against the United States because the Federal Defendants' actions are "not one of discretion but mandated through the administrative process" is unfounded.  The scope of the Federal Defendants' discretionary or administrative duties is irrelevant to whether sovereign immunity applies to them.  There is a discretionary function exception to the waiver of sovereign immunity by the FTCA.  See 28 U.S.C. §2680(a).  But whether or not the Federal Defendants' actions were discretionary, the FTCA does not apply to Crosby's constitutional tort claims.  Crosby's reference to the Foreign Sovereign Immunities Act ("FSIA") in his reply brief is likewise irrelevant.  The FSIA only applies to foreign states claiming immunity.

in a § 1983 action, <u>Givens v. Jones</u>, 900 F.2d 1229, 1233 (8th Cir. 1990), "the Courts of Appeals have unanimously rejected the contention . . . that the doctrine of <u>respondeat superior</u> is available against a municipal entity under a <u>Bivens</u>-type action implied directly from the Fourteenth Amendment." <u>Jett v. Dallas Indep. Sch. Dist.</u>, 491 U.S. 701, 735, 109 S.Ct. 2702, 2722, 105 L. Ed. 2d 598 (1989) (internal citations omitted).

Crosby's allegations demonstrate that he is attempting to hold the Federal Defendants liable for the actions of others in failing to respond to grievances.  He explicitly alleges that Ashcroft "is responsible for the action [sic] of his subordinates." Am. Compl. 15.  Moreover, Crosby claims that Georgakopoulos, "through the deliberate indifference of prison official [sic] to my rights failed to respond to my cries for help." <u>Id.</u> at 12.  As the Federal Defendants point out, neither of them are directly responsible for, or in direct control of, the conditions at the HCCC, which is a Hudson County, New Jersey facility, contracted by the United States to hold immigration detainees.  Crosby cannot hold the Federal Defendants responsible for the actions of officials within the HCCC because <u>Bivens</u> liability requires proof of direct personal responsibility. <u>See Pellegrino v. United States</u>, 73 F.3d 934, 936 (9th Cir. 1996). Therefore, any claims by Crosby against the Federal Defendants under a theory of <u>respondeat superior</u> are dismissed.

Crosby's claims are similar to those of the plaintiff in

Rode v. Dellarciprete.   In Rode, the plaintiff filed grievances
with the Governor's office of administration and alleged that the
Governor and Attorney General had personal knowledge because they
had the power to review and approve agency regulations.   845 F.2d
at 1208.   The Third Circuit Court of Appeals, however, dismissed
plaintiff's claims against the Governor and Attorney General as
insufficiently alleging personal involvement.   Id.   The Third
Circuit Court of Appeals held that "[t]he power to review and
approve a departmental regulation for form and legality, however,
does by no means charge the Governor and Attorney General with
the duty to enforce that regulation."   Id.    Moreover, "a
contrary holding would subject the Governor to potential
liability in any case in which an aggrieved employee merely
transmitted a complaint to the Governor's office of
administration or to the Lieutenant Governor's office."   Id.
Likewise, although Crosby alleges that Ashcroft is responsible
for ensuring that "all facilities are to standard . . . before
approval for use is given," Am. Compl. 15, this power does not
charge Ashcroft with the duty to enforce the regulation.
Crosby's claim that Georgakopoulos' office failed to respond to
Crosby's letters and complaint are insufficient to show that
Georgakopoulos had actual knowledge of Crosby's complaints as
well.   Crosby's reply brief, which further elaborates on
conditions at the HCCC, fails to support personal involvement by
Federal Defendants.   Thus, the Federal Defendants have not

23

violated any recognized constitutional rights.  The Supreme Court admonishes against permitting "insubstantial lawsuits" against high government officials to proceed to trial because they "undermine the effectiveness of government. . . ."  <u>Harlow</u>, 457 U.S. at 819 n.35 , 102 S.Ct. at 2739.  In light of such considerations, the Federal Defendants' qualified immunity defense stands, and the Court dismisses the claims against the Federal Defendants in their individual capacities.

    E.   <u>Request to Amend the Amended Complaint</u>

In Crosby's September 9, 2004 reply to Federal Defendants' motion to dismiss, Crosby requests leave to amend his Amended Complaint to include retaliatory conduct.  The Court denies Crosby's request as deficient.  Request to amend a complaint should be made through a proper motion and not within a reply brief.

    F.   <u>Motion and Demand for Jury Trial by Crosby</u>

Crosby also filed a "Motion and Demand for Jury Trial" on September 2, 2004, requesting the following: (1) a schedule to proceed to trial by jury pursuant to Fed. R. Civ. P. 38(b); (2) issuance of a discovery plan pursuant to Fed. R. Civ. P. 26.1; (3) issuance of a scheduling order pursuant to Fed. R. Civ. P. 16; (4) default judgment against all defendants; (5) a temporary injunction voiding the Federal Defendants' contract with HCCC to house immigration detainees; and (6) summary judgment pursuant to Fed. R. Civ. P. 56.1.

The Court denies Crosby's "Motion and Demand for Jury Trial." Crosby's request for issuance of a trial date, discovery plan, and scheduling order are premature. Magistrate Judge Madeline Cox Arleo will issue the proper scheduling orders in due time. Furthermore, there is no basis for default judgment against any defendants. All defendants have answered Crosby's Amended Complaint with dispositive motions. Crosby's request for a temporary injunction is likewise denied. Crosby has not provided sufficient information to weigh the immediate necessity of a temporary injunction. Crosby's request for summary judgment is also premature. Because discovery has not occurred yet and the Court has denied Warden Green's motion to dismiss for Crosby's claims of exposure to second-hand smoke and cold temperature, the request for summary judgment is denied.

**III. CONCLUSION**

For the reasons stated above, Federal Defendants' motion to dismiss is **granted**. Hudson County's motion to dismiss is **granted**. In his official capacity, Warden Green's motion to dismiss is **granted**. In his individual capacity, Warden Green's motion to dismiss on Crosby's claims of gang activity, poor air ventilation, unsanitary food trays, spoiled food, and high cost telephone calls is **granted**. In his individual capacity, Warden Green's motion to dismiss on Crosby's claims of second-hand smoke exposure and cold temperature is **denied**.

The Court **denies** the various relief requested in Crosby's "Motion and Demand for Jury Trial."

An appropriate order follows.


                         /s/ William G. Bassler
                      William G. Bassler, U.S.S.D.J.

DATED: June 24, 2005